IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
RAHEEM A.B. BROWN,              :
AIS #254938,                    :
    Plaintiff,                  :
                                :
vs.                             :       CIVIL ACTION 13-638-WS-M
                                :
BRANDON CARROLL, et al.,        :
    Defendants.                 :
                                :
```

REPORT AND RECOMMENDATION

This action under 42 U.S.C. § 1983 brought by an Alabama prison inmate, Raheem A.B. Brown, proceeding *pro se* and *in forma pauperis,* was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Plaintiff's Complaint (Doc. 1), and Defendants Brandon Carroll and Jeremiah Bullard's Answer and Special Report (Docs. 12, 13). The Court has converted these documents into a Motion for Summary Judgment (Doc. 14), and, after consideration of such, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be granted and that all claims asserted against them by Plaintiff be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff.

I.   Facts and Proceedings

Based on the record before it, the Court summarizes the parties' relevant allegations as follows.

Plaintiff is an Alabama Department of Corrections ("ADOC"), inmate currently housed at Holman Correctional Facility ("Holman"), serving a twenty-year and five-year concurrent sentence for Robbery in the First Degree and Escape. (Doc. 1 at 6). As Defendants, Plaintiff names Correctional Officer Brandon Carroll and Correctional Officer Jeremiah Bullard.[1] (Doc. 1 at 5).

According to Plaintiff, Defendants Carroll and Bullard "applied force upon [P]laintiff that was not in a good faith effort to maintain and/or restore discipline, but was used maliciously and sadistically to cause harm to [P]laintiff." (*Id*). Specifically, Plaintiff states that while he was attempting to plug the shaving clippers into the wall in the TV room, Defendant Carroll "walked up behind him and snatched the barber bag from [him] and looked inside of it and acted as he was looking for contraband, when [Defendant] Carroll found no contraband,

---

[1] Plaintiff also names two fictitious defendants as John Doe (Doc. 1 at 5, 9). The fictitious parties set out in the complaint are hereby **STRICKEN** since fictitious party pleading is not generally recognized under the Federal Rules of Civil Procedure. See e.g., Fed.R.Civ.P. 10(a); 28 U.S.C. § 1441(a); Rommell v. Automobile Racing Club of America, Inc., 964 F.2d 1090, 1098 n.14 (11th Cir. 1992); Weeks v. Benton, 649 F.Supp. 1297, 1298 (S.D. Ala. 1986).

2

[Plaintiff] stated 'Now that's what you get for wanting to just harass somebody.'" (*Id.* at 4, 8). Plaintiff contends that Defendant Carroll then became aggressive, using unprofessional language, thereby causing Plaintiff to walk off. (*Id.* at 8). Plaintiff then alleges that Defendant Carroll "threw the barber bag at [him] and called for backup." (*Id.*).

Next, Plaintiff alleges Defendant Carroll grabbed and choked him causing him to fall to his knees as Carroll "draged [sic Plaintiff] out of the T.V. room, as if he was pulling a dog by it's [sic] collar, causing severe injuries to his knees." (Doc. 1 at 8). Plaintiff states that as backup arrived, Defendant Carroll was still choking him and "fell on top of [Plaintiff] and started banging [his] mouth repeatedly against the concrete floor causing a loosen [sic] tooth, busted [sic] lip, and a bruised jaw." (*Id.*).

Defendant Bullard responded to Carroll's call for backup. (*Id.*). Plaintiff contends that Defendant Bullard handcuffed Plaintiff and "twisted his arms and wrist and continued to twist his arms and wrist, after he was cuffed and restrained causing servere [sic] pains in [Plaintiff's] swollen wrist and arm." (*Id.*). Plaintiff believes that Defendant Bullard "intended to inflict more pain upon [Plaintiff] by attempting to break [his] arm and wrist."

3

(*Id.*). Plaintiff contends he then blacked out. (*Id.* at 9). Despite being allegedly unconscious, Plaintiff recalls that two other inmates said, "that's enough, he is not moving anymore," to which Defendant Carroll stated, "I'm not gonna [sic] let you niggas hurt me." (*Id.*). Again, still in a presumably unconscious state, Plaintiff recalls that Carroll swapped looks with Defendant Bullard which led Carroll to "change his words to 'I'm not gonna [sic] let you inmates do anything to hurt me.'" (*Id.*).

Plaintiff claims that "[a]s a result of the force that was applied upon [him], his injuries were more than *de minimus* due to injuries to [his] neck, knees, jaw, lip and tooth." (*Id.*). Plaintiff states his "injuries required emergency medical attention due to the blackout, [and] the force was unjustified and resulted in the wanton infliction of pain." (*Id.*).

For relief, Plaintiff requests "$50,000.00 in punitive damages, $25,000.00 in compensatory damages, jury trial demand; all attorny [sic] fee and court cost taxed to state."

Defendants field their Answer and Special Report (Docs. 12, 13), denying Plaintiff's allegations and alleging the defenses of, *inter alia,* failure to state claim upon which relief can be granted, standing,

4

assumption of the risk, and all applicable immunities. (Doc. 12). Specifically, Defendant Carroll attests that on the date in question, he noticed several inmates looking at the ironing board, which turned out to be a barber bag instead. (Doc. 13-2 at 1). Defendant Carroll confiscated the barber bag and found two cell phones, one cell phone charger, and two pairs of hair clippers in the bag. (*Id.*). Plaintiff then "walked up to [him] and struck [his] forearm and attempted to snatch the bag out of [Defendant Carroll's] hands." (*Id.*). Defendant Carroll backed away and called for backup on his radio while using a "straight arm hand palm to the chest area of [Plaintiff] to keep him at a distance. [He] ordered [Plaintiff] to step back," but Plaintiff instead refused his direct order and blocked the exit way to prevent Defendant Carroll from exiting. (*Id.* at 1-2). Defendant Carroll attests that Plaintiff then "drove his shoulder into [Carroll's] torso area while striking [his] arm causing the bag to fall to the floor." (*Id.* at 2). "While [Defendant Carroll] was attempting to retrieve the bag, he began to struggle with [Plaintiff] and [they] fell to the floor. [Defendant Carroll] landed on top of [Plaintiff's] back and restrained him on the floor utilizing a shoulder pin restraint [until a]ssistance arrived and [] handcuffed [Plaintiff]." (*Id.*).

5

Defendant Bullard likewise denies Plaintiff's allegations, and attests that, in responding to a "Code Red" in Housing Unit C in the T.V. room, he handcuffed Plaintiff to the rear and escorted him out of the T.V. room. (Doc. 13-3 at 1). Defendant Bullard swears that at no time did he twist or cause pain to Plaintiff's arms or wrist. (*Id.*).

Attached to Defendants' Special Report are the relevant institutional records for Plaintiff, as well as his medical records indicating the treatment he received as a result of the altercation. (Docs. 13-1, 13-4).

Included in the institutional records is the incident report stemming from the scuffle. The incident report tracks Defendants' versions of the events, and the hearing officer, based on the evidence presented by Plaintiff and Defendants, found Plaintiff guilty of a rule #902- Assault on a person associated with the DOC violation. (Doc. 13-1 at 4-5, 17).

Likewise, Plaintiff's medical records do not correspond with the injuries he alleges he sustained. Instead, the records indicate the he suffered only minor abrasion to his knee and top lip, with his pain level existing at a "zero" out ten. (Doc. 13-1 at 6). His injuries were cleaned and his knee was covered and

monitored thereafter for infection, swelling and stiffness. (Doc. 13-4 at 16, 19, 39). The medical records do not indicate a blackout occurring due to the altercation, and the photographs of Plaintiff's injuries do not indicate the sort of severity he alleges, nor does Plaintiff appear to be incoherent due to a blackout in any of the photographs. (Doc. 13-1 at 7-12). It is also noteworthy that Plaintiff was treated by the medical staff at "1705," some thirty-five minutes after the altercation began at 4:45 p.m. (Doc. 13-4 at 16, 19).

## II.  Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with the following basic principles. The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to the party who moves for summary judgment. FED.R.CIV.P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. *Barfield*

*v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989). However, Rule 56(e) states that:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED.R.CIV.P. 56(e). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). "Summary judgment is mandated where a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

III. Discussion

a. 42 U.S.C. § 1983

8

As set out above, Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 for the injuries he allegedly received on September 29, 2013, by Defendants Carroll and Bullard. (Doc. 1). Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (1994).

b. Excessive Force

The language of the Eighth Amendment regarding "cruel and unusual punishment" manifests the general intention to prohibit the unnecessary and wanton infliction of pain without penological justification. *Ort v. White,* 813 F.2d 318, 321 (11th Cir. 1987) (citations omitted). However, the Supreme Court has noted that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, *Rhodes v. Chapman,* 452 U.S.337, 349 n. 14 (1981); therefore, courts should not freely substitute their judgment for that of officials who have chosen a course of discipline in an often dangerous

and unruly environment.  *Ort* at 322 (*citing Whitley v. Albers,* 475 U.S. 312 (1986).

To establish a viable Eighth Amendment claim, the evidence must show that the measure taken inflicted unnecessary and wanton pain and suffering, or was totally without penological justification.  *Ort* at 322; *see also Rhodes,* 452 U.S. at 346. Unnecessary and wanton infliction of pain is distinguished from punishment and defined as an "immediate coercive measure undertaken by a prison official, necessitated by a spontaneous violation of a prison rule or regulation." *Ort* at 322.  This situation dictates that prison officials undertake immediate action to end the violation without the luxury of hindsight and reflection.  *Id.*  The final determination "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.*  A higher standard with a more culpable intent requirement is applied where a plaintiff claims the use of excessive force.  *Flowers v. Bennett,* 135 F.Supp. 2d 1150, 1155 (N.D.Ala. 2000).  Thus, under *Whitley* and its progeny, a plaintiff must prove that those who used force against him acted with malicious purpose, *see Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir. 2002), and that a requisite

amount of force was used against him. *Hudson v. McMillian,* 503 U.S. 1, 9-10 (1992). His evidence must go beyond a mere dispute over reasonableness of the force used and support a reliable inference of wantonness in the infliction of pain. *Brown v. Smith,* 813 F.2d, 1187, 1188 (11th Cir. 1987).

In determining malicious purpose and whether the use of force was wanton or unnecessary, the *Whitley* Court established five factors to consider: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 475 U.S. at 321.

Plaintiff contends that as a result of the search of the barber bag which contained contraband, he was treated with excessive force for no reason other than to inflict malicious and sadistic harm on him. The Court concludes that Plaintiff fails to establish the existence of essential elements to his claim, i.e., malice and/or sadistic intent on the part of Defendants, sufficient to withstand Defendants' evidentiary submissions, and which would allow a jury to return a verdict in his favor. Other

than Plaintiff's own version of the incident, he offers no evidence which tends to bolster his position. As such, his allegations are conclusory and unsupported by the record, and therefore, cannot be taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000)("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984)(a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). In the event it can be found that Plaintiff's allegations are not conclusory, the Court will engage in the five-factor *Whitley* test set out above.

Applying the five *Whitley* factors, it again becomes clear that Plaintiff has failed to meet his burden in pleading his claim for excessive force against Defendants Carroll and Bullard. First, the Court concludes that there was clearly a need for the application of force once Plaintiff struck Defendant Carroll in the arm, charged him and burrowed his shoulder into Carroll's chest, and engaged him in a scuffle. To protect himself, Defendant Carroll initially used a straight-arm hand palm to Plaintiff's chest and ordered him to step back. (Doc. 13-2 at 2).

Plaintiff refused to comply with this order and instead blocked the doorway so Defendant Carroll could not exit. (Id). The Eleventh Circuit has long held that using force to compel compliance with a valid order satisfies the first factor regarding a need for an application of force. *Brown,* 813 F.2d at 1189. Once Plaintiff engaged Defendant Carroll in a scuffle,[2] there is no question that Defendant Carroll needed to apply some amount of force to regain order with Plaintiff.

Second, as for the relationship between the need and the amount of force used, it is clear that the amount of force used did not exceed the amount necessary to subdue Plaintiff. In response to Plaintiff's rebellion, Defendant Carroll did not brutalize or unnecessarily injure Plaintiff. In fact, he used the least amount of force possible to invoke Plaintiff's compliance- a straight-arm hand palm to Plaintiff's chest, and a shoulder pin restraint after the scuffle ensued. Again. there is no question that a physically rebelling prisoner warrants a physical application of force in response to his conduct. To not respond with corresponding force, a prison official would not be able to maintain order to prevent harm to

---

[2] Defendant Bullard had not responded to Defendant Carroll's call for backup, thus he was not engaged in the altercation yet.

13

himself or to other prisoners. Furthermore, the medical records documenting Plaintiff's injuries demonstrate that the amount of force used was proportionate to the need for force. Most importantly though, a disciplinary hearing was conducted regarding the incident and it was found by the hearing officer that Plaintiff was guilty of violating rule #902- assault on a person associated with the DOC. (Doc. 13-1 at 17). Thus, the second factor is satisfied.

Likewise, Defendant Bullard attests that he merely handcuffed Plaintiff to the rear and escorted him out of the T.V. room. (Doc. 13-3 at 1). At no time did he twist Plaintiff's arms or wrists with the intent to cause him undue pain. In addition to Defendant's statement, the medical records neither indicate that Plaintiff complained of arm or wrist injuries, nor that he received treatment for arm or wrist injuries. Having used no more force than necessary, or no force at all, the second factor is also satisfied as to Defendant Bullard.

Third, given Plaintiff's assault on Defendant Carroll, and his refusal to comply with direct orders to step back, it is clear that Defendants Carroll and Bullard reasonably perceived Plaintiff and his insubordination as a threat. It is well settled that "when an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over

14

a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger." *Helton v. Burks,* 2013 WL 6081764 (M.D. Ga. Nov. 19, 2013)(*citing Soto v. Dickey,* 744 F.2d 1260, 1267 (7th Cir. 1984). Further, the threat perceived by Defendant was fully realized when Plaintiff became assaultive toward Defendant Carroll. The fact that Plaintiff initiated the assault by striking Carroll's arm, and drove his shoulder into Carroll's chest, and was found guilty of such in the disciplinary hearing, confirms that Defendants Carroll and Bullard were justified in perceiving Plaintiff as a threat, and in using the appropriate amount of force to subdue him.

Fourth, the Defendants' efforts to temper the severity of their force were sufficient, although minimal, since the amount of force used was likewise minimal. Originally, Defendant Carroll attempted to control Plaintiff with almost no force: a straight-arm hand palm to his chest, thereby giving him the opportunity to avoid the altercation altogether. Plaintiff refused to comply to the extent that Defendant Carroll realized that some force became necessary to subdue Plaintiff. All force ceased once Plaintiff was subdued, and he was given medical attention for his minor injuries within thirty minutes of the altercation.

Fifth, and finally, Plaintiff's injuries were not severe. With no more than a swollen lip and a scraped up knee, it is apparent from the record that Plaintiff's injuries were not severe enough to warrant any special treatment above that offered to a child who tripped and skinned his knee on the playground. Plaintiff was given palliative treatment within approximately thirty minutes of the altercation. The treating nurse cleaned and bandaged Plaintiff's knee and surveyed his upper lip, and then released him for processing into segregation with instructions to monitor for swelling and infection. (Doc. 13-1 at 5). Notably, during Plaintiff's medical treatment, he denied having pain, and rated his pain as a "zero" on a scale of one to ten, which is wholly inconsistent with his allegations that he blacked out during the altercation, or that his arms and wrists were twisted to inflict severe swelling and pain. (Doc. 13-1 at 6). The record also proves that Plaintiff's injuries are plainly inconsistent with being dragged like a dog by his collar. Accordingly, Plaintiff fails to establish the fifth and final factor on his claim for excessive force.

In light of these five factors, it is apparent that Defendants did not act in a bad faith, malicious or sadistic fashion. Moreover, Plaintiff's assertions are not

substantially probative, but merely conclusory, and it is well settled that a conclusion cannot be taken as true. *Ashcroft,* 556 U.S. 662, 678-79; *see also Leigh,* 212 F.3d 1210, 1217 ("[t]his court has consistently held that conclusory allegations without specific supporting facts have no probative value"); *Fullman,* 739 F.2d 553, 556-57 (a Plaintiff's mere verification of conclusory allegations is not sufficient to oppose a motion for summary judgment). Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that his allegations do not support a reliable inference that a wanton infliction of pain was imposed by the extraction team; thus there is no dispute sufficient enough that a trier of fact could return a verdict in Plaintiff's favor. S*tanfil v. Talton,* 851 F.Supp.2d 1346, 1371 (M.D. Ga. 2012)(*citing Whitley,* 475 U.S. at 322).

The Court cannot and does not condone physical force used against prisoners if designed for the purpose of causing "unnecessary and wanton infliction of pain." *Ort,* 813 F.2d at 321. "The infliction of pain in the course of a prison security measure, [however], does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence

unnecessary in the strict sense." *Id.* at 323. Bearing in mind all of the factors enumerated above, the Court finds that Defendants did not use excessive force on Plaintiff in an effort to wantonly inflict unnecessary pain, but merely to maintain order in the prison and over the unruly Plaintiff who purposefully created a hostile situation by assaulting Defendant Carroll. Accordingly, the force used by Defendants Carroll and Bullard against Plaintiff was not excessive and Plaintiff's Eighth Amendment claim for excessive force fails as a matter of law.

## IV. Conclusion

Based on the foregoing reasons, this Court concludes that Defendants Carroll and Bullard are entitled to Summary Judgment in their favor on all claims asserted against them by Plaintiff. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be granted, and that this action against these Defendants be dismissed with prejudice, and that judgment be entered in favor of Defendants and against Plaintiff on all claims.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of

this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 26th day of August, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE